IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT ALLEN DAVIS,<br><br>    Defendant. | **No. 1:08-cr-00013-JEG**<br><br>**O R D E R** |

This matter is before the Court on Defendant's Motion to Suppress, which the Government resists.  Hearing was held on the matter on May 9, 2008.  Defendant was represented by attorney Chad Primmer.  The Government was represented by Assistant United States Attorney Richard Rothrock.  After allowing for supplemental briefing from counsel, the matter is now fully submitted for review.

**SUMMARY OF MATERIAL FACTS**

Bomgaar's is a farm supply store with several locations, including one in Blair, Nebraska.  On September 5, 2006, Ray Malovsek (Malovsek), Bomgaar's district manager, and Dave Meyer (Meyer), Bomgaar's general manager, reported to law enforcement that the Blair Bomgaar's store had a large amount of inventory missing.  Malovsek and Meyer said they suspected two Bomgaar employees, Defendant Robert Davis (Defendant) and his girlfriend Lori Ryan (Ryan), were involved in the theft.

Meyer advised law enforcement that an informant leaked information to an employee at the Council Bluffs, Iowa, Bomgaar's store.  The informant stated he believed someone who works for Bomgaar's was taking stolen store merchandise to a farm and selling it for half of its retail price.  The employee who spoke with the informant then reported the information to his immediate supervisor, stating that a "Bob Davis" who lives in Woodbine, Iowa, was selling

stolen merchandise out of his farm.  The supervisor contacted Meyer and Malovsek, who in turn

started an internal investigation.  They discovered that Defendant, who has the last name

"Davis," worked part-time at the Blair Bomgaar's store, and the Blair store indeed had a signifi-

cant loss in inventory.  They also discovered some of the merchandise missing from the Blair

Bomgaar's store was the same merchandise offered to the informant who initially came forward

with the information.

Harrison County Sheriff Terry Baxter (Sheriff Baxter) testified that in an effort to

corroborate the information provided by Meyer and Malovsek, he drove by Larry Davis' farm to

conduct a visual inspection.  Sheriff Baxter observed two green bale feeders by the side of the

farm's driveway that were not in use and appeared to be new.  Sheriff Baxter then drove by

Defendant's residence and observed a green horse hay feeder and a combination hay and grain

feeder that were in use in Defendant's lot.

On September 6, 2006, Blair Police Department Investigator Nick Thallas (Thallas),

Sheriff Baxter, and Joe Matulka (Matulka), the manager of Bomgaar's, drove together to Larry

Davis' farm.  Matulka identified three green round horse bale feeders and a set of grey gates

already installed on the property as merchandise that is sold by Bomgaar's.  The trio then drove

to Defendant's farm, where Matulka observed a green round bale horse feeder, a v-rack horse

feeder with black paint, and grey plastic pipe farm gates, all merchandise Matulka reported as

stolen from the Blair Bomgaar's store.

Law enforcement had also been provided with a crime stoppers report regarding the

alleged Bomgaar's theft operation.  The crime stoppers report indicated that a "Davis" had been

stealing from the Blair Bomgaar's store for over a year, and "Davis" had been taking the stolen

items to his brother Larry Davis' home in Woodbine, Iowa.[1]  The caller reported it was unknown

whether Larry Davis was aware the items being stored on his farm were stolen.

Based on this information, law enforcement sought and obtained two separate search

warrants: one for Larry Davis' farm and one for Defendant's farm.  It is undisputed the search

warrant for Larry Davis' farm did not permit access to the residence located on the property.

When officers arrived at Larry Davis' farm to execute the search warrant, they were greeted by

Larry Davis, who indicated there were items on his property he deemed suspicious in nature.

Officers located certain items they believed were stolen from the Blair Bomgaar's store.

Sheriff Baxter testified Larry Davis stated if stolen property was located on his property,

he wanted it removed by law enforcement.  Officers then asked for and received Larry Davis'

consent to search the inside of his residence.  The sheriff testified that once inside the residence,

firearms were clearly visible through the glass doors of a few gun cabinets.  Sheriff Baxter asked

Larry Davis who the firearms belonged to, and Larry Davis indicated they belonged to Defen-

dant.  The sheriff advised Larry Davis that Defendant was a prohibited person and could not

possess firearms, and Larry Davis stated he thought Defendant had cleared that matter up and

could legally possess the firearms.  Sheriff Baxter then verified through an NCIC[2] check that

Defendant was a felon, advised Larry Davis of the information obtained from NCIC, and asked

Larry Davis if he had a problem with the officers seizing the firearms.  Larry Davis gave his

consent for the officers to seize the firearms, provided the officers with the combination to one of

the cabinets, and provided keys to the other gun cabinets.  When Larry Davis did not know the

---

[1] The record reflects Larry Davis is in fact Defendant's uncle, not his brother.

[2] National Crime Information Center.

location of the key to one of the gun cabinets, law enforcement officers at Larry Davis' property

contacted the officers executing the search warrant at Defendant's property, and Defendant

voluntarily provided the officers with the location of the key to the gun cabinet.

After providing law enforcement with access to the firearms located in the gun cabinets,

Larry Davis advised the officers there was also ammunition being stored in a bedroom located on

the first floor of his residence and led Sheriff Baxter to this bedroom.  Sheriff Baxter testified the

door to the bedroom was open, and he observed large amounts of ammunition in the bedroom.

Larry Davis stated the ammunition belonged to Defendant.  Law enforcement seized

this ammunition.

On March 19, 2008, a Grand Jury filed a two-count indictment charging Defendant with

being a felon in possession of a firearm (count one) and forfeiture (count two).  On April 11,

2008, Defendant filed the present Motion to Suppress, arguing the search warrant was issued

without probable cause that the property to be searched contained evidence of a crime and that

the Leon[3] good-faith exception to the warrant requirement does not apply to the facts and

circumstances of this case.

The Government has resisted the motion, arguing Defendant does not have standing to

bring his motion and has failed to make the preliminary showing necessary to obtain a Franks v.

Delaware[4] hearing.  The Government further argues there is no fruit of the poisonous tree, and

the Leon good-faith exception, while unnecessary, provides further support that the search

warrant was valid.

---

[3] United States v. Leon, 468 U.S. 897 (1984).

[4] Franks v. Delaware, 438 U.S. 154 (1978).

## APPLICABLE LAW AND DISCUSSION

**Fourth Amendment Protection**

Defendant has challenged the validity of the search warrant issued for the search of

Larry Davis' property and the validity of Larry Davis' consent to search his residence.  "[I]n

order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he

personally has an expectation of privacy in the place searched, and that his expectation is

reasonable."  Minnesota v. Carter, 525 U.S. 83, 88 (1998); see also United States v. Salvucci,

448 U.S. 83, 85 (1980) ("[D]efendants charged with crimes of possession may only claim the

benefits of the exclusionary rule if their own Fourth Amendment rights have in fact

been violated.").

> Several factors are relevant to this showing: whether the party has a
> possessory interest in the things seized or the place searched; whether the
> party can exclude others from that place; whether the party took precautions
> to maintain the privacy; and whether the party had a key to the premises.

United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999) (citing Rawlings v. Kentucky, 448

U.S. 98, 105 (1980)).

Defendant does not argue he has a possessory interest in his uncle's farm property or

residence.  Instead, Defendant argues he was entitled to a reasonable expectation of privacy at

Larry Davis' residence because (1) he was related by blood to the owner of the residence, (2) he

maintains a regular presence in the residence, (3) he stores some of his possessions in the

dwelling, (4) he had been granted exclusive use of a particular area of the residence, (5) he was

allowed to remain in the residence when Larry Davis was absent, and (6) he had taken precau-

tions to develop and maintain his privacy in the residence.

Sheriff Baxter testified Defendant did not live at Larry Davis' residence; Defendant lived in his own residence located approximately thirty miles away, and Larry Davis had advised the sheriff that Defendant only stayed overnight at the residence occasionally.  Other than some collectible toy tractors, the alleged stolen property, and the firearms and ammunition, there is no evidence Defendant kept any of his personal effects, such as clothing, at Larry Davis' residence.

The record shows Defendant's uncle maintained knowledge of the combination to one of the gun cabinets and had access to the keys to all of the other gun cabinets except one, to which Larry Davis could not locate the key.  When law enforcement asked Defendant for the location of the key to this gun cabinet, Defendant himself voluntarily disclosed to the officers the location of the key, which was located within Larry Davis' residence.  The door to the bedroom full of ammunition was left open, and there is no evidence to suggest Defendant was granted exclusive use of that bedroom.  While ultimately arguing some interest in the premises, Defendant presented no evidence in support of that argument.

Given the totality of the circumstances, Defendant has failed to show he had a legitimate expectation of privacy in his uncle's residence or the gun cabinets and bedroom full of ammunition located therein.  "If there is no legitimate expectation of privacy, then there can be no Fourth Amendment violation." United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002).  Because Defendant's Fourth Amendment rights were not violated, he cannot claim the benefits of the exclusionary rule based on any alleged invalidity of the search warrant or his uncle's voluntary consent to search his residence.

The Government indicated at oral argument it would prefer to obtain a ruling on the merits of whether the search warrant was valid and whether Larry Davis' consent was valid, rather than to have the motion resolved on the issue of whether Defendant could establish a

violation of his own Fourth Amendment rights.[5]  On the available record, the Court can conclude

both that the warrant was supported by probable cause and that Defendant has not demonstrated

a violation of *his* Fourth Amendment protections.  The Court proceeds to consider the additional

issues of the Franks challenge and the validity of Larry Davis' consent.

**Franks Challenge**

To prevail on a Franks challenge, a defendant must establish that (1) a "false statement

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant

in the warrant affidavit," and (2) that "with the affidavit's false material set to one side, the affi-

davit's remaining content is insufficient to establish probable cause."  United States v. Searcy,

181 F.3d 975, 980 (8th Cir. 1999) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

"The defendant bears the burden of proving by a preponderance of the evidence that the affiant

intentionally or recklessly included false statements in a warrant affidavit."  United States v.

Gipp, 147 F.3d 680, 688 (8th Cir. 1998) (citing United States v. Garcia, 785 F.2d 214, 222 (8th

Cir. 1986)).

In Franks, the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false
> statement knowingly and intentionally, or with reckless disregard for the truth,
> was included by the affiant in the warrant affidavit, and if the allegedly false
> statement is necessary to the finding of probable cause, the Fourth Amend-
> ment requires that a hearing be held at the defendant's request.  In the event

---

[5] The Government has addressed this as an issue of standing.  Because, as the present
case illustrates, factual distinctions may impact a defendant's ability to demonstrate an
expectation of privacy at a given location, the concept of standing has been abandoned in favor
of an analysis under Fourth Amendment doctrine of whether a defendant can demonstrate a
sufficient expectation.  See Rakas v. Illinois, 439 U.S. 128, 140 (1978) ("[T]his Court's long
history of insistence that Fourth Amendment rights are personal in nature has already answered
many . . . traditional standing inquiries, and we think that definition of those rights is more
properly placed within the purview of substantive Fourth Amendment law than within that
of standing.").

> that at that hearing the allegation of perjury or reckless disregard is
> established by the defendant by a preponderance of the evidence, and, with
> the affidavit's false material set to one side, the affidavit's remaining content
> is insufficient to establish probable cause, the search warrant must be voided
> and the fruits of the search excluded to the same extent as if probable cause
> was lacking on the face of the affidavit.

Franks, 438 U.S. at 155-56.

> If the defendant can make such a showing, and if the alleged false statement
> forms the basis for probable cause, the Fourth Amendment requires the court
> to conduct a hearing at the defendant's request.  If the defendant presents no
> proof that the affiant lied or recklessly disregarded the truth, the court is not
> required to conduct a hearing.

United States v. Gleich, 397 F.3d 608, 613 (8th Cir. 2005).

"The requirement of a substantial preliminary showing is not lightly met.  United States

v. Mathison, 157 F.3d 541, 548 (8th Cir. 1998) (quoting United States v. Wajda, 810 F.2d 754,

759 (8th Cir. 1987)) (quotation omitted).  "A mere allegation standing alone, without an offer of

proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insuf-

ficient to make the difficult preliminary showing."  Id. at 548 (citing Franks, 438 U.S. at 171).

Defendant contends material facts were omitted from the search warrant affidavit, and

intentional misrepresentations were made in reckless disregard for the truth, directing the Court's

attention to the following language contained in the search warrant: "The informant or the

informant's information appears credible for the following reasons: INFORMANT LISTED IN

THIS APPLICATION IS ALSO THE MANAGER OF THE BOMGAAR'S STORE IN BLAIR,

NE."  There is no evidence to suggest this is a false statement.  In fact, Matulka provided two

separate written statements that were included in the search warrant application, and Matulka

was listed by name as the informant in the search warrant application materials.

Defendant also asserts the statements of Matulka were tainted, unreliable, and arguably

impossible because the property could not have been viewed from the road as reported in the

search warrant affidavit.  Delbert King (King), a self-employed private investigator who testified

on Defendant's behalf, stated he visited Larry Davis' farm on April 9, 2008, and spoke with

Defendant's father, Keith Davis, who advised him that in September 2006, the green bale feeders

were located behind bales of hay.  King testified that based on this information from Keith

Davis, in his opinion, if a person was driving past Larry Davis' farm, they would have possibly

been able to observe the top of the green bale feeders, but he did not think they would have been

able to see the entire feeder because the bales of hay would have obstructed the view.  King

admitted (1) he did not observe Larry Davis' farm on September 6, 2006, (2) he had no personal

knowledge of what the property looked like at that point in time, and (3) he had no knowledge

whether Keith Davis visited Larry Davis' farm on September 6, 2006, or the last time Keith

Davis was on Larry Davis' property.  King also stated the green bale feeders are manufactured

with no identifying marks, and therefore it would be impossible to trace or identify a particular

feeder unless an individual put their own identifying mark on the feeder.

    The observations of Matulka and law enforcement contained in the search warrant affi-

davit were made contemporaneous to the search warrant application.  King's opinion regarding

the ability to make such observations, on the other hand, is based on information provided to him

approximately nineteen months later by Defendant's father.  There is no evidence to suggest

Keith Davis observed Larry Davis' property on September 6, 2006, and King does not dispute he

made no personal observations of the property on September 6, 2006.

    Defendant has failed to show the search warrant affiant intentionally or recklessly included

false statements in the search warrant affidavit, or omitted facts with the intent to make, or in

reckless disregard of whether they would make, the affidavit misleading.  The Court concludes

Defendant has failed to make the preliminary showing necessary to obtain a Franks hearing.

Defendant also argues the affidavit in support of the search warrant did not state sufficient facts to constitute probable cause.  "Probable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief "that certain items may be contraband or stolen property or useful as evidence of a crime." United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).  The search warrant application details the information Meyer and Malovsek pro-vided to law enforcement, the subsequent visual observation of the same type of merchandise sold by Bomgaar's on Larry Davis' farm by law enforcement officers and Matulka, and the crime stoppers tip detailing the Bomgaar's theft and the location of stolen property on Larry Davis' farm.  The Court concludes sufficient facts were set forth in the search warrant affidavit to support a finding of probable cause.

**Consent of Larry Davis**

Defendant argues law enforcement officers entered Larry Davis' residence without consent, and that if consent was given, it was not done so voluntarily.  Because Larry Davis' consent to search is challenged in the context of Defendant's allegation he had a personal expectation of privacy in Larry Davis' residence, the Court first examines whether Larry Davis had authority to consent to a search of the residence.

When assessing whether law enforcement's belief in an individual's authority to consent was reasonable, "the critical inquiry is whether the facts available to the police at the time the consent is given would warrant a person of reasonable caution to believe the consenting party had authority over the place to be searched."  United States v. Hilliard, 490 F.3d 635, 639 (8th Cir. 2007).  Larry Davis is the owner of the residence searched and had joint access to the gun cabinets where the firearms were being stored, as demonstrated by his knowledge of the combi-nation to one of the locks, and the location of the keys to the other gun cabinets.  The Court

concludes it was reasonable for the officers to believe Larry Davis had authority to consent to the search of his own residence, the gun cabinets located therein, and the bedroom in which the ammunition was stored.  See United States v. Hinkle, 456 F.3d 836, 840-41 (8th Cir. 2006) (finding the named property owner had both actual and apparent authority to consent to a search of a locked trailer located on the property because in addition to being the owner of the property, she had joint access to the trailer as evidenced by her access to the trailer's keys and knowledge of how to use the corresponding locks).

Even if Defendant could establish a violation of his own Fourth Amendment rights, there is no evidence in the record to support a conclusion Larry Davis did not provide a knowing and voluntary consent.  Sheriff Baxter testified he advised Larry Davis he could ask the officers to leave at any time and that the search warrant did not encompass any property not listed in the search warrant.  Sheriff Baxter testified that upon discovering stolen property on his property, Larry Davis indicated he wanted it removed by law enforcement.  The sheriff testified he then sought Larry Davis' consent to search the interior of the residence, and Larry Davis voluntarily gave his consent.  Larry Davis did not ask the officers to leave at any time, and in fact the record shows he was very cooperative with law enforcement in their investigative efforts.  With no record evidence to the contrary, the Court concludes Larry Davis provided a knowing and voluntary consent to search his residence.

Defendant also characterizes Larry Davis' consent as "fruit of the poisonous tree."  The record shows the search of Larry Davis' farm was pursuant to a valid search warrant and not conducted in violation of the Fourth Amendment; therefore the Court concludes Larry Davis' consent does not constitute fruit of an illegal search.

**Leon Good Faith Exception**

In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme Court held that the Fourth

Amendment exclusionary rule should not be applied so as to exclude evidence obtained by

officers acting in reasonable reliance on a search warrant issued by a detached and neutral

magistrate but ultimately found to be invalid.

> Four circumstances exist in which the <u>Leon</u> good faith exception does not
> apply and suppression remains an appropriate remedy: (1) the magistrate
> judge issuing the warrant was misled by statements made by the affiant that
> were false or made "in reckless disregard for the truth"; (2) "the issuing
> magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit
> in support of the warrant is "so lacking in indicia of probable cause as to
> render official belief in its existence entirely unreasonable," or (4) the warrant
> is "so facially deficient . . . that the executing officers cannot reasonably
> presume it to be valid."

<u>United States v. Taylor</u>, 119 F.3d 625, 629 (8th Cir. 1997) (quoting <u>Leon</u>, 468 U.S. at 923).

Defendant relies on the third prong in making his <u>Leon</u> argument.  As previously discussed, the

search warrant affidavit contained ample facts to support a probable cause determination.  There

is no basis in the record for finding the search warrant was so lacking in probable cause as to

render official belief in its existence unreasonable.  The Court therefore concludes a detailed

<u>Leon</u> analysis is not necessary.

## CONCLUSION

The Court concludes Defendant has failed to demonstrate he personally had a reasonable

expectation of privacy in the places searched; therefore Defendant cannot claim the protection of

the Fourth Amendment.  Defendant has made no sufficient showing to require a <u>Franks</u> hearing.

And, the record supports a conclusion that Larry Davis gave a valid consent to the search of the

house and its contents.  Accordingly, Defendant's Motion to Suppress (Clerk's No. 20) must

be **denied**.

**IT IS SO ORDERED.**

Dated this 29th day of May, 2008.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT